Estate of John Henkel, deceased.   Appeal of Charlotte
Muller.

*Family exemption act of* 1851—*Widow when only claimant.*

Where there is a widow surviving who is capable of taking under the
Act of April 14, 1851, P. L. 612, she has the primary right to take the en-
tire fund, to the exclusion of the children.   And if such surviving widow
waives the privilege of the act it is lost to the family.

*Capability not life of widow the test.*

It is not, however, the mere existence of a widow, but the existence of
her right which defeats the right of the children; if there be no widow
capable of claiming the provision the dependent family is not to be de-
feated because there is living a widow who is not capable of taking.

*Family relation—Right of children to claim.*

The question whether dependent family relations exist between a father
and his minor children does not depend on whether they live in the same
house but whether in contemplation of law they remain members of the
family.

An agreement between husband and wife to live separate, the wife for
a consideration to support herself and minor children while it will defeat
the wife's claim to the widow's exemption did not relieve the father from
his liability to provide for the children, and hence cannot defeat the irright
to claim under the act of 1851.

Argued May 17, 1899.   Appeal, No. 224, April T., 1899, by
Charlotte Muller, from decree of O. C. Erie Co., Feb. T., 1898,
No. 13, in distribution.   Before RICE, P. J., BEAVER, ORLADY,
W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Affirmed.
Opinion by W. D. PORTER, J.

Exceptions to auditor's report.   Before LINDSEY, P. J.

It appears from the record that John Henkel died testate
making Charlotte Muller residuary legatee, leaving three minor
children, Della, Louisa and Ida and a widow, Katharine, who in
consideration of $1,800 to her paid prior to his death agreed to
live sole and separate from decedent at her own expense with-
out charge or involving her said husband in any debt or debts
whatever for her maintenance and support, or for the mainte-
nance and support of their minor children during their minor-
ities.   She had also relinquished all interest in his estate and

agreed that he might by his last will and testament dispose of the same as he desired.

Claims were filed for the exemption of $300 under the act of 1851, on behalf of the widow Katharine and on behalf of the three minor children. The claim on behalf of the widow was withdrawn.

The auditor, J. R. Brotherton, disallowed the claim to the minor children of decedent. The court below sustained the exceptions to the auditor's report and awarded the sum of $300 to said minor children. Charlotte Muller, residuary legatee, appealed.

*Error assigned* among others was in awarding the $300 from the fund in the hands of the executor to Ida, Della and Louisa Henkel, the three minor children of decedent.

*Harry L. Moore*, for appellant.—Under the Acts of April 14, 1851, P. L. 612, and April 8, 1859, P. L. 425, the exemption allowed to the widow and children of decedents, must be paid directly to the widow; the children of the decedent are not entitled to any portion of it: Himes's Appeal, 94 Pa. 381.

It has been held by the court in a number of decisions that the right of a widow to retain real or personal property of her deceased husband's estate to the value of $300 is a personal privilege which she may waive by agreement with her husband: Speidel's Appeal, 107 Pa. 18; Schmitt's Estate, 19 Phila. 38.

Or may be barred from exercising by reason of delay in claiming: Baskin's Appeal, 38 Pa. 65.

Or where by her own act she did not form part of her husband's family, either actually or constructively at the time of his death: Nye's Appeal, 126 Pa. 341.

*Henry E. Fish*, with him *John S. Rilling*, for appellees.—Under the circumstances existing in this case the children were entitled to the exemption under the act of 1851.

When, then, or under what circumstances are the children entitled to it?

This question can be answered by reference to authority in Hettrick v. Hettrick, 55 Pa. 290. Justice AGNEW says: "The right is given in the disjunctive to the widow or children in

order that when the family relation extends no further, either may enjoy it.

In Tiernan v. Binns, 92 Pa. 248, Justice PAXSON says: "If there are no children, the widow takes absolutely." The converse would undoubtedly be true.

In King's Appeal, 84 Pa. 345, Justice MERCUR said: "It is only in case no widow survived to accept this charity of the statute, that it passed to the children."

In the common pleas case of Alexander's Estate, 13 Phila. 564, it was held where the decedent left minor children, but no widow, the children were entitled to retain either real or personal estate to the amount of $300.

In the case of Nelson v. Thomson, 2 Pa. Dist. Rep. 844, it was held, that where the wife and husband were separated by divorce, the minor children were entitled to the exemption of $300 out of their father's estate.

OPINION BY W. D. PORTER, J., April 23, 1900:

Katherine 'Henkel, the widow of the deceased, demanded that property to the amount of $300 be set aside to her for the use of the family, in accordance with the provisions of the Act of April 14, 1851, P. L. 612, and at the same time the three minor daughters of the deceased presented a like claim. An auditor was appointed and during the proceedings before the auditor the claim of Katherine Henkel for the benefit of the provisions of said act was withdrawn, and the auditor, after hearing, made a report disallowing the claim of the minor children. The court below sustained exceptions to the report of the auditor, and entered a decree, awarding $300 to the three minor daughters of the deceased. From that decree we have this appeal.

The right of the minor daughters of the deceased to the sum in question is contested by the appellants upon two grounds: first, that where there is a widow living, the children of the deceased cannot take under the provisions of the act of 1851; second, that the children were not members of the family of their father at the time of his death.

The provision of the act is: "Hereafter the widow or the children of any decedent dying within this commonwealth, testate or intestate, may retain either real or personal property

belonging to said estate, to the value of $300, and the same shall not be sold but suffered to remain for the use of the widow and family." This has been uniformly held to be a provision intended for the maintenance and support of the decedent's family and to be enjoyed by them, so that one bereavement should not be followed by another — the loss of subsistence. The purpose of the legislation was to protect the family from financial distress immediately after the death of the father, and during the process of the settlement of the estate. The right is to retain the property, which shall remain for the use of the widow and family. When no family relation exists the legislation is not operative. The right is given in the disjunctive to the widow or children, in order that when the family relation extends no further, either may enjoy it, but the use is declared in the conjunctive for the widow and family, that both may be provided for. None can claim who do not stand in the family relation toward the decedent. A widow, living in a foreign county, had been separated from her husband for years and had never formed part of his family here, was held not entitled: Spier's Appeal, 26 Pa. 233. Nor can a wife claim, under the act, who has left her husband and renounced all conjugal intercourse for a considerable time before his death; she is not such a widow on his death as is contemplated by the statute: Odiorne's Appeal, 54 Pa. 175; Nye's Apppeal, 126 Pa. 341. A wife who has by articles of separation agreed to live separate and apart from her husband, and not at any time thereafter to claim any jointure, dower or third interest out of his estate, such articles being followed by an immediate and continued separation, cannot claim under the act: Dillinger's Appeal, 35 Pa. 357; Speidel's Appeal, 107 Pa. 18. Where a woman about to marry enters into an antenuptial contract relinquishing all right of dower, and all interest of any kind whatsoever to which she might be entitled in the estate of her intended husband, she waives her right to claim under this act after her subsequent marriage and the death of her husband: Tiernan v. Binns, 92 Pa. 248. It was said by Mr. Justice STRONG in Nevins's Appeal, 47 Pa. 230: " The same regard for the manifest intention of the legislature requires us to hold that children who are adults, who are not members of the immediate family of the decedent, but have gone out from the

paternal home to provide for themselves, are not the benefici-aries intended." These decisions leave no question that the foundation of the claim must be in the existence of the family relation at the time of the death of the husband and father. When there is a widow surviving, who is capable of taking under the act, she has the primary right to take the entire fund, to the exclusion of the children, the law investing her with a discretion as to the proper use of the same, declaring only that it is intended for herself and the family: Nevins's Appeal, supra; King's Appeal, 84 Pa. 345. If such surviving widow waives the privilege of the act, it is lost to the family: Davis's Appeal, 34 Pa. 256.

It seems clear that if the widow in the present case was entitled under the act, the allowance of the exemption to the minor children was erroneous. In answer to this position, how-ever, the appellees rely upon the finding of the auditor and the undisputed fact that on June 20, 1894, John Henkel, the dece-dent, and Katherine, his wife, entered into articles of separa-tion, duly executed, under the terms of which they agreed to live separate and apart. And the said Katherine, "in considera-tion of the sum of eighteen hundred dollars, granted, released and quitclaimed for all dower, right and title of dower, and all other right, title, interest, claim or demand whatsoever, in law or equity, of, in and to all lands and estate whatsoever, both real and personal, wheresoever situate, now owned or here-after to be owned by the said John Henkel." And the said Katherine Henkel also agreed, in consideration of the payment of said sum of $1,800, that she would "support, maintain, feed, clothe and care for the minor daughters, and each of them, of the said John Henkel and her, the said Katherine Henkel, at her own expense during their respective minorities." At this time the husband and wife and the minor children were living together, in one home, in the county of Erie, but immediately after the execution of the articles of separation, a separation took place, the mother going to a distant home and the minor daughters going with her, in accordance with the agreement of their father and mother. In this situation matters continued until the death of John Henkel in November, 1896. These facts clearly establish that Katherine Henkel, the widow, was not entitled to claim as widow the exemption allowed by the

act of 1851.  The question presented, therefore, is not whether the children can take when there is a widow living, but whether they can take when the widow has no right to claim under the act.  It is manifest that the intention of the legislature was to provide for those who were dependent upon the decedent as members of his family, and there was some purpose in introducing the term "widow or children."  If the widow has any right, it is superior to that of the children, but it is conceded that if no widow survive, the children can claim.  It is the priority of the right of the widow, so long as she is capable of taking, which excludes the children, and so long as that right is in existence the claims of the children must remain in abeyance.  It is not, however, the mere existence of a widow, but the existence of her right which defeats the right of the children.  If there be no widow capable of claiming, the beneficent intention of the legislature to provide for the dependent family is not to be defeated because there is living a widow who is not capable of taking.  If a widower who has a number of young children, being about to contract a second marriage, enters into an antenuptial contract, in which the parties agree to waive all claims upon each other's estates, contracts the marriage and afterwards dies, the rights of his young children under the act would not be defeated because their stepmother was debarred from claiming.  So if a wife forsakes her husband and a number of young children, who continue to live with their father until his death, the children would not be deprived of the benefits of the act because of the misconduct of their mother. Katherine Henkel had no right to claim under this act, and if the appellees were the minor children of the decedent, dependent upon him for support, and stood in the family relation towards him, their right to this fund was paramount.

It remains to be determined whether the family relation existed in this case.  It is not necessary that the parties should have been living in the same home, or in the same city, if the separation was not the voluntary act of the appellees.  There is no evidence whatever that these parties had gone out into the world to make their own way, and so severed their connection with their home.  It is true they were living with their mother, separated from their father, but they were so domiciled because of the agreement of their father and mother, to which they

were not parties.  The father and mother agreed that these minor daughters should live with the mother, and all that the children could do was to obey their parents.  The father was a party to the agreement which sent them, whether they consented or not, from under his roof.  He paid his wife so much money for keeping them during their minority.  This agreement did not relieve the father from his moral or legal liability to provide for those children.  If their mother had died or had failed or refused to support and maintain the children, the liability of the father for their support and maintenance still remained.  Had the mother turned the children out of doors, they were dependent upon their father for some other asylum. The question is not whether the parties live in the same house, but whether, in contemplation of law, they remain members of the family.  Where the separation has been through no fault or voluntary act of the dependent person, but has resulted solely from the fault or for the convenience of the father or husband, the family relation, in contemplation of law, continues to exist: Terry's Appeal, 55 Pa. 344.

The learned court below undoubtedly arrived at the proper conclusion.

Judgment affirmed.