## Crawford's Estate.

*Widow's exemption—Wife living under agreement of separation—Fiduciaries Act of June 7, 1917.*

A wife living at the time of the death of her husband apart from him under a written agreement of separation is not entitled to the $500 exemption allowed under section 12(a) of the Fiduciaries Act of June 7, 1917, P. L. 447; the existence of the family relation is essential to the allowance of the exemption, except where its severance was the fault of the husband. Section 6 of the Intestate Act of June 7, 1917, P. L. 429, which expressly provides that a wife who has wilfully and maliciously deserted her husband for a period of one year before his death has no right to claim any interest in his property under that act, has no application to the construction of the above clause of the Fiduciaries Act.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1921, No. 634.

*Cecelia P. Bass,* for exceptant; *John R. McLean, Jr.,* contra.

THOMPSON, J., Jan. 6, 1922.—William Crawford died Dec. 31, 1920, intestate, leaving to survive him his widow, Anna S. Crawford, and one daughter, Mary E. Crawford. Anna S. Crawford filed her petition for the exemption of $500 allowed under section 12 *(a)* of the Fiduciaries Act of June 7, 1917, P. L. 447, to which an answer was filed by Mary E. Crawford, a daughter of the decedent by a prior marriage, setting up the fact that the petitioner had withdrawn from decedent's home and had continued in such withdrawal for a period of three and one-half years prior to decedent's death, and that, therefore, she was not a member of decedent's household at the time of his death, said withdrawal being the result of a written agreement between decedent and petitioner to that effect. No replication seems to have been filed, and the petition and answer were submitted to the auditing judge upon the settlement of the accounts of the administratrix and claim made before him for said exemption. The auditing judge disallowed the claim of the petitioner on the ground that the family relation did not exist between her and the decedent at the time of his death, to which exceptions have been filed, and the same are now before us.

The petitioner claims that, notwithstanding her agreement with the decedent to live separate and apart from him, and in compliance therewith, she had so lived separate and apart from the decedent for a period of three and one-half years prior to his death, she is not deprived of her right to the $500 exemption allowed a widow under the Fiduciaries Act, for the reason that the Intestate Act of 1917 defines when a widow shall not participate in her husband's estate, and that the petitioner does not come within the definition therein contained. Section 12 *(a)* of the Fiduciaries Act of 1917 provides in part as follows: "The widow, if any, or if there be no widow, or if she has forfeited her rights, then the children forming part of the family of any decedent dying, testate or intestate, within this Commonwealth, or dying outside of this Commonwealth, but whose estate is settled in this Commonwealth, may retain or claim either real or personal property, or the proceeds of either real or personal property, belonging to said estate, to the value of $500."

Section 6 of the Intestate Act of June 7, 1917, P. L. 429, provides as follows: "No wife who shall have, for one year or upwards previous to the death of her husband, wilfully and maliciously deserted her husband shall have the right to claim any title or interest in his real or personal estate after his decease, under the provisions of this act."

We cannot see any connection between the Fiduciaries Act of 1917 and the Intestate Act of 1917 in respect to the widow's exemption. Prior to the Act of 1917, the existence of the family relation was essential to the allowance of

the widow's exemption, except, of course, where the severance of the family relation was the fault of the husband.  The Intestate Act provides what interest a widow shall have in her husband's estate, and it expressly provides, if she wilfully and maliciously desert her husband, she shall have no interest in his estate "under the provisions of this act."  The Fiduciaries Act gives her an additional $500, separate and distinct from her interest under the Intestate Act.  Section 12 (a) of the Fiduciaries Act is founded upon section 5 of the Act of April 14, 1851, P. L. 612, as amended by the Act of July 21, 1913, P. L. 875, in respects not bearing upon the present question. The words "or if she has forfeited her rights" are not in the Act of 1851, and it is argued that they were inserted in the Fiduciaries Act of 1917 for the purpose of defining what was required to forfeit the widow's right as set forth in section 6 of the Intestate Act of 1917.  But, as we have seen, the manner of forfeiture set forth in the Intestate Act applies only to the widow's interest under that act, whereas the framers of the Fiduciaries Act of 1917 wisely did not attempt to define what would forfeit the widow's right to her exemption under the Fiduciaries Act.  As the law stood at that time, the existence of a family relationship was essential to the allowance of the widow's exemption.  She could also be barred from her exemption by her laches in applying for the same, whereby rights of creditors became involved and expenses are incurred, or where distribution had been made.  We do not mean by this that these are the only reasons which would prevent the widow from obtaining her exemption, but suggest them as indicating what the framers of the Fiduciaries Act must have had in mind when they drafted the same.  That a difference between the rights of a widow to her exemption and her rights under the Intestate Act exists is clearly set forth in Post's Estate, 27 Dist. R. 748, referred to by the auditing judge as being reported in 33 York Leg. Record, 11.  It frequently happens that a widow is denied her exemption and yet is allowed to participate in the distribution of her husband's estate: Rudolph's Estate, October Term, 1920, No. 619.  That a widow has been denied her exemption where the family relationship did not exist is shown by a reference to many cases: Post's Estate, 27 Dist. R. 748; Wenger's Estate, 27 Dist. R. 949; Creighton's Estate, 7 Dist. R. 251; Welsh's Estate, 5 Dist. R. 675; Scullin's Estate, 5 Pa. C. C. Reps. 188; Henkel's Estate, 13 Pa. Superior Ct. 337.

Counsel for the widow contends that Schreckengost's Estate, 77 Pa. Superior Ct. 235, is an authority for sustaining their contention, but an examination thereof shows that all that case decided was that there is a presumption, by reason of the marital relation, that the widow is entitled to her exemption and her share in the decedent's estate, which can be rebutted by showing that the family relationship was severed through no fault of her husband, and that she was not justified in leaving him.  The opinion further shows that the allowance of the widow's exemption and her share in her husband's estate were given to her on the ground that she was justified under the evidence in leaving her husband.

We conclude that the petitioner did not occupy a family relationship to her husband at the time of the latter's death, and that her claim for the $500 exemption was properly refused.

The exceptions are dismissed and the adjudication is confirmed absolutely. LAMORELLE, P. J., did not sit.

NOTE.—Rudolph's Estate, October Term, 1920, No. 619, was not reported because it turned on special facts, and is of little or no value as a precedent.  The case, however, is a good illustration of the distinction between the principles gov-

1 D. & C.

erning the right of a widow to participate in the distribution of her husband's estate and her right to the widow's exemption. In that case claim was made by the widow to take against the will and also for her exemption. The residuary legatee contested the right so to do on the ground that she had been living separate from her husband for twenty-three years preceding his death and had been guilty of desertion. There was no satisfactory evidence of the cause of the separation. The first auditing judge held that the separation being established, the inference arose therefrom that it was unwarranted and that she was guilty of desertion. The matter was subsequently referred back by the court *in banc* for further testimony to a second auditing judge, who held that desertion could not be inferred from the separation, and that she was, therefore, entitled to participate in the distribution though disentitled to her exemption. The court *in banc* sustained the latter award on the ground that the widow, having testified, without objection, that her husband told her to "get out" of the house, she could not be regarded as guilty of desertion under the authority of Olson *v.* Olson, 27 Pa. Superior Ct. 128. It is significant, however, that there was no question that under Post's Estate, 27 Dist. R. 748, her claim to the widow's exemption must be denied.